# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

JESSE L. LOSEY,

    Plaintiff,

v.                                      CIVIL ACTION NO.: CV612-078

TIFFANY NAIL,

    Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who was formerly incarcerated at Smith State Prison in Glennville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement. Defendant Tiffany Nail and former Defendants Thompson, Bass, and Brown filed motions for judgment on the pleadings. The undersigned recommended that the Defendants' motions be granted, and the Honorable B. Avant Edenfield adopted these recommendations as the opinion of the Court. (Doc. Nos. 27, 29, 33, 35). Plaintiff filed an appeal. The Eleventh Circuit Court of Appeals affirmed this Court's judgment as to all Defendants except Defendant Nail ("Defendant"). (Doc. No. 40). The Eleventh Circuit determined that Plaintiff arguably stated a colorable claim for relief against Defendant, reversed this Court's judgment as to Defendant, and remanded for proceedings consistent with its opinion. (Id. at pp. 6–7). Defendant has filed a Motion for Summary Judgment. Plaintiff filed a Response.

Defendant filed a Reply. For the reasons which follow, Defendant's Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that a fellow inmate, Reggie Whitehead, raped him while he was housed at Smith State Prison ("SSP"). Plaintiff contends that Defendant was an officer who was to perform a census count and security check in the dorm in which Plaintiff was housed. Plaintiff asserts that Defendant did not perform a proper count or check on the night of the alleged rape, and she walked by the window of inmate Whitehead's cell but did not look into the cell or intervene.

Defendant alleges that Plaintiff fails to state an Eighth Amendment claim against her. Defendant also alleges that she is entitled to qualified immunity.

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law.

2

See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge her burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION AND CITATION TO AUTHORITY

Defendant contends that Plaintiff was not at substantial risk of harm while he was at SSP due to any conduct on her part. Defendant asserts that Plaintiff socialized with Reggie Whitehead in his cell before the alleged assault and was aware of Whitehead's affiliation with a prison gang. Defendant also asserts that Plaintiff went to Whitehead's cell on the night of the alleged assault to use a contraband cell phone. Defendant avers that there is no evidence that she had subjective knowledge that Plaintiff was in danger, as Plaintiff did not alert anyone that he was in danger and that the only officer Plaintiff saw walk past the cell was a white female. Defendant asserts that she is a black female. Defendant also asserts that there is no evidence from which a jury could infer

3

that she had subjective knowledge of a risk of harm to Plaintiff and disregarded that risk by conduct amounting to more than gross negligence.

Plaintiff asserts that there are facts in dispute from which a jury could reasonably conclude that Defendant was aware of an impending sexual assault against Plaintiff and disregarded that risk. Plaintiff contends that he assumed that the officer who was at the cell was white because he saw a white female officer walking upstairs and "thought she must be the same guard who walked by the cell[.]" (Doc. No. 62, p. 12). However, Plaintiff avers, Defendant is the only officer who would have performed a check or census count between 10:30 and 11:30 that night, and she conducted a census check and reported it to the control officer at approximately 11:30 p.m.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. "'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation.'" Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319-20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. However, "simple

4

negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14. In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry. Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260–61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90).

Plaintiff testified that he normally spent time in Whitehead's cell, and he even lived with Whitehead a few days before the incident in question on an "unofficial basis." (Doc. No. 59-7, p. 30). Plaintiff also testified that he went to Whitehead's cell on the evening in question to use a contraband cell phone. (Id. at p. 12). Plaintiff stated that he was not sure of what time Whitehead raped him, but he (Plaintiff) heard "count time" or "twelve", which indicated that an officer was coming into the dorm. (Doc. No. 59-8, pp. 12–13, 18). Plaintiff declared that the lights were off in Whitehead's cell and that he

AO 72A
(Rev. 8/82)

was lying with his face down in a blanket. (Id. at pp. 6, 8). Plaintiff testified that he saw a flashlight shining into the cell and an officer at the window, who looked into the cell but who was not "actually looking in[ ]" the cell. (Id. at p. 19). Plaintiff described the officer as "a white lady[ ]", who was "probably a little bit heavier set[.]" (Id. at p. 21). Plaintiff testified that he could not see the female officer's face, only the back of her hair for about three to five seconds, which he thought was black or brown and that he believed he later saw the same woman walking up on the top range. (Id. at p. 26). Plaintiff testified generally that "all the officers knew everything about you." (Doc. No. 59-9, p. 24). Plaintiff also testified that an unnamed officer who worked at SSP and then was transferred to Georgia State Prison while Plaintiff was housed there told him, "they've known about Reggie." (Id. at p. 25).

Defendant testified that she did a quick census count, which is essentially a head count, at the beginning of her shift on the evening in question. (Doc. No. 63, pp. 21, 24). Defendant stated that this count took about five (5) minutes and consisted of looking into the cells. (Id. at p, 40–42). Defendant also stated that, during these census checks, she did not check to see which inmates are in which cells, only for live bodies in the cells. Defendant further stated that some cells had two or three inmates assigned to the cells and that the inmates are allowed to go where they want within a dorm up until lockdown. (Id. at pp. 46, 53–55). Defendant testified that she looked into every cell during these census counts, but she would only know if the wrong number of people were in the cell, not if the wrong people were in the cell. (Id. at p. 124). Defendant declared that she had no knowledge of which inmates were in gangs. Defendant also declared she would not have simply walked away if she saw a sexual encounter

6

between inmates and would have called for backup if there were a problem. (Id. at pp. 108, 110). Defendant testified that officers receive yearly in-service training, and rape and sexual assault prevention is discussed during this training.

The evidence before the Court indicates that Defendant had no knowledge that Whitehead posed a substantial risk to Plaintiff's or any other inmate's safety. Plaintiff testified that "they" knew Whitehead had a reputation for violence, but the officers' collective, general knowledge is not enough to show that Defendant had this knowledge and ignored it. In addition, and in viewing the evidence in the light most favorable to Plaintiff, the evidence shows that a white female officer looked inside the cell when Plaintiff was allegedly being raped and did not do anything to stop this assault. However, there is no evidence before the Court that this female (Defendant is a black female) actually saw anything untoward happening in Whitehead's cell and ignored it. Defendant and former Defendant Linda Bass both testified that, during a census count, officers only check for bodies because inmates could be anywhere within the dorm before lockdown. (Doc. No. 65, pp. 33, 39). At most, Defendant may have been negligent by not noticing if an assault was occurring, which is an insufficient basis for liability under the Eighth Amendment. Plaintiff has not met his burden of showing a genuine dispute as to any fact material to his claim that Defendant was deliberately indifferent to his safety.

It is unnecessary to address the remaining portion of Defendant's Motion. Martinez v. Burns, 459 F. App'x 849, 851 (11th Cir. 2012) (qualified immunity defense need not be address if the plaintiff cannot sustain a constitutional violation).

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion for Summary Judgment be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 7th day of July, 2014.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)